# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **VFI ASSOCIATES, LLC, ET AL.** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:08CV00014 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **LOBO MACHINERY CORP.,** | ) | By: James P. Jones |
| **ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Thomas A. Leggette, Leggette Law Firm, PLC, Roanoke, Virginia, for Plaintiffs; Jay H. Steele and Benjamin G. Sharp, Lebanon, Virginia, for Defendants.*

In this civil action for damages, it is claimed that the defendants conspired with an insider to defraud the plaintiffs' business by submitting inflated invoices for equipment and paying kickbacks. Based on the evidence presented at a bench trial, the following are the court's findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a)(1).[1]

---

[1] The court made limited findings at the conclusion of the bench trial and this opinion supplements and supercedes in part those rulings.

# I

## A. Procedural Background.

This action was filed by VFI Associates, LLC ("VFI"), Nicewonder LPI, and Burke LPI in 2008 against Lobo Machinery Corp. ("Lobo Machinery"), Lobo Power Tools, Inc. ("Lobo Power Tools"), Robin Yuan ("Yuan"), and Esther Pei Fang Chang ("Chang").[2]    There were extensive pretrial proceedings, including numerous discovery disputes.[3]   In addition, a change in presiding judges, the substitution of counsel for the defendants, and medical issues for plaintiffs' counsel, all delayed the ultimate trial.

In essence, the case boils down to a conspiracy by Yuan and Chang to defraud VFI by charging excessive prices for equipment sold by their companies, Lobo Machinery and Lobo Power Tools, and paying kickbacks to VFI's dishonest manager, Luther Boyd, in order to facilitate the fraud.   In spite of the simplicity of this scheme,

---

[2] "VFI" apparently stood for "Virginia Flooring International." The original VFI has since been replaced by a new entity, Reconstituted VFI, LLC, which has been substituted in this case in the place of the original plaintiff. For convenience, both will be referred to herein as "VFI."

[3] As will be later discussed in relation to the issue of attorneys' fees, the pretrial pleadings in this case far exceed what might otherwise be expected in regard to the straight-forward nature of the issues. The docket indicates that prior to trial, 120 separate motions were filed, the vast majority by the plaintiffs.

Case 1:08-cv-00014-JPJ-PMS   Document 358   Filed 03/22/12   Page 2 of 21   Pageid#: 7108

the Third Amended Complaint seeks recovery on 12 different causes of action in 329 numbered paragraphs covering 68 pages.

Summary judgment as to liability was granted prior to trial in favor of the plaintiffs against defendants Yuan, Lobo Machinery, and Lobo Power Tools, but denied as to defendant Chang. *See VFI Assocs., LLC v. Lobo Mach. Corp.*, Nos. 1:08CV00014, 1:08CV00027, 1:08CV00038, 2011 WL 4048774, at *1 (W.D. Va. Sept. 12, 2011). The court also entered summary judgment against Lobo Machinery and Lobo Power Tools as to their Counterclaim against VFI. *See id.* The parties waived a jury, and the case was tried before the undersigned on February 14-15, 2012, as to damages against defendants Yuan, Lobo Machinery, and Lobo Power Tools, and as to liability and damages against defendant Chang. Neither Yuan or Chang appeared or testified at the trial, although portions of their pretrial depositions were introduced by the plaintiffs.[4] The defendants presented no evidence.

---

[4] During the course of this case, a separate criminal investigation was begun by the U.S. Attorney of the events in question and Chang thus refused to answer questions at a second discovery deposition, relying on her Fifth Amendment rights. Accordingly, I precluded her from testifying at trial. *VFI Assocs., LLC v. Lobo Mach. Corp.*, No. 1:08CV00014, 2010 WL 5557129, at *1 (W.D. Va. Nov. 22, 2010). As a separate discovery sanction, I also precluded the defendants from offering evidence at trial as to the amount of markup in the sale of the machinery in question, as well as related matters. *VFI Assocs., LLC v. Lobo Mach. Corp.*, No. 1:08CV00014, 2010 WL 4868110, at *1 (W.D. Va. Nov. 22, 2010).

B. Findings of Fact.

The following are the court's findings of fact. In determining the facts, I have taken into account the rationality and internal consistency of the testimony, the extent of detail and coherent nature of the testimony, the manner of testifying by the witnesses, and the degree to which the subject testimony is consistent or inconsistent with other evidence in the case.

1.  Plaintiff VFI is a Virginia limited liability company with its principal place of business in Virginia. Its main business during the events in question in this case was to purchase imported "exotic" wood and finish it as quality hardwood flooring for sale to retail outlets in and outside of Virginia. Its owners included plaintiff Burke LP I, a Virginia limited partnership whose general partner is G. Michael Burke ("Burke") and plaintiff Nicewonder LP I, a Virginia limited partnership whose general partner is Donald Nicewonder ("Nicewonder").

2.  Defendant Lobo Machinery is a California corporation with its principal place of business in California. It is owned by defendant Yuan but had no legitimate business activity during the events in question in this case. It was utilized by the other defendants to carry out their fraudulent scheme.

3.  Defendant Lobo Power Tools is a California corporation with its principal place of business in California and which is owned by defendant Yuan and

- 4 -

defendant Chang. It engaged in the business of purchasing industrial machinery in China and reselling it elsewhere, including in Virginia.

4.     Defendant Yuan and defendant Chang are husband and wife. They reside in and are citizens of California. Yuan is the chief executive officer of Lobo Power Tools and Chang is its chief financial officer who maintains the books and records of the business. While Chang denied being a shareholder of Lobo Power Tools, the books of the company show that she received distributions as a shareholder, in addition to her salary compensation, and I find that she was in fact a shareholder.

5.     Chang exercised close control of the books and records of the business, including the operation of the business's accounting software program, known as the "Platinum Program." She routinely entered data into the Platinum Program.

6.     In late 2005, Nicewonder and Burke, wealthy businessmen, were approached by a local attorney, John Bundy, with information about a new business opportunity presented by a person named Luther Boyd. Boyd already operated a similar business, called Clinch Mountain Hardwood Flooring, Inc. ("CMHF"). Through representations about the business opportunity and the financial history of CMHF, Boyd convinced Nicewonder and Burke to invest in the new business

venture.[5]   Asked to investigate Boyd's reputation, attorney Bundy reported to Nicewonder and Burke that there were no problems.

7.    VFI was thereafter formed in order to carry out this new business venture, with various limited partnership as owners, including those owned by Bundy and Boyd.  However, only Nicewonder and Burke actually invested money in the business.  Bundy received his interest as a "finder's fee."  Under the Operating Agreement for VFI, Boyd LP I (owned by Boyd) was named the manager of VFI.

8.    Boyd advised Nicewonder and Burke that VFI would need to purchase a "finishing line," that is, the machinery and equipment necessary to finish the wood into quality hardwood flooring.[6]  He told them that he could get one from Taiwan and that it would cost nearly $1 million.  In fact, a finishing line as needed by VFI should have cost only about one-quarter of that amount.

_____

   [5] Luther Boyd and his wife, Teresa Colston-Boyd, have been recently indicted by the grand jury of this court for conspiracy, mail fraud, bank fraud, money laundering, and other crimes relating to the scheme described in this case and other matters. *United States v. Boyd*, Case No. 1:12CR00005 (W.D. Va. Feb. 21, 2012).  Of course, my findings here are derived only from the evidence presented in this civil case, and I make no rulings applicable to the criminal case and express no opinion as to whether the government will be able to prove its criminal charges beyond a reasonable doubt.  In addition, the plaintiffs in this case have also sued Boyd, his wife, and related entities in separate civil actions for money damages. *Treads USA, LLC v. Boyd* LP I, Case No. 1:08CV00027 (W.D. Va.) and *Burke LP I v. Boyd*, Case No. 1:10CV00038 (W.D. Va.).  I have stayed those cases pending the resolution of the criminal case.

   [6] According to the evidence, a finishing line consists of sanding machines, roll coaters for applying lacquer, ultraviolet curing ovens, and conveyors.  (Pls.' Ex. 70.)

- 6 -

9. Thereafter, Boyd convinced Nicewonder and Boyd that the business needed a second finishing line.

10. Boyd arranged for the two finishing lines to be purchased from Lobo Power Tools, which in turn purchased the equipment from a source in China and resold it to VFI. The cost to Lobo Power Tools to purchase the equipment was $197,730.79, as shown on its records.[7] VFI paid a total of $1,485,443.57 for the equipment, which was shipped and installed at VFI's place of business in Virginia. At the direction of Yuan and Chang, their companies paid large sums of money in kickbacks or bribes to Boyd, his wife, relatives, or companies that they controlled, in order to obtain the excessive prices for the equipment. As shown on its records, the average markup taken by Lobo Power Tools on its sales was only 24.4 per cent, rather than the over-500 per cent markup apparent here. There was no legitimate reason for the payments from the defendants to Boyd and his affiliated persons and companies.

11. Chang was directly involved in the fraud. In her role as the CFO, Chang was responsible for the books and records of Lobo Power Tools and exercised close control over those books and records. She routinely entered data into the Platinum Program and made multiple unorthodox entries to cover up the kickbacks that were

---

[7] Although there was some confusion over the actual cost of the finishing lines to Lobo Power Tools, this figure reflects the cost of the two machines ($133,233.37 and $64,497.42) as submitted at trial through Plaintiffs' Exhibit 46.

- 7 -

being paid to Boyd and his associates. Chang either produced or assisted in the production of the false invoices that were sent to VFI and signed multiple checks constituting the kickback payments.

12.   Once suit was filed in this case, Yuan, Chang, and their companies obstructed discovery by producing false information in an effort to avoid liability.

13.    Although she initially provided deposition testimony, Chang then invoked her Fifth Amendment right and thereafter refused to testify.

14.   VFI's business was not successful and it still possesses the finishing line equipment purchased, which it has been unable to sell, although it did receive an offer of $52,000.

C.  Discussion.

*Chang's Liability.*

The plaintiffs allege that Chang is liable under 18 U.S.C.A. §§ 1962 (c) and (d) (West 2000).  Section 1962 (c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C.A. § 1962 (c).  Section 1962(d) states that it is unlawful for any person to conspire to violate any of the provisions of subsections (a) through (c).

- 8 -

The elements of a RICO violation have been proved by a preponderance of the evidence. Chang presented no evidence to refute any of that presented by the plaintiffs. The enterprise at issue is the association-in-fact between Yuan, Chang, Boyd and Lobo Power Tools to defraud VFI by selling it finishing lines at vastly inflated prices and kicking back the money to Boyd and his associates.[8] *See Boyle v. United States*, 556 U.S. 938 (2009). Chang was unquestionably associated with this enterprise. The enterprise was engaged in interstate commerce because correspondence, payments, and machinery and equipment so traveled.

Further, Chang conducted or participated directly in the conduct of the enterprise by manipulating Lobo Power Tools' books and records, creating false invoices, signing kickback checks, and obstructing access to accurate data and documents. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (finding that it is necessary only to prove that the defendant had some part in directing the enterprise to prove participation). This is true even if she acted at the direction of her husband. *Id.* at 184; *see also MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 978-79 (7th Cir. 1995) (finding that under *Reves*, lower-rung participants in an enterprise who are under the direction of management can still be liable as

---

[8] I will deny the plaintiffs' post-trial Motion to Conform the Pleadings to the Evidence (ECF No. 345) as unnecessary and moot.

Case 1:08-cv-00014-JPJ-PMS   Document 358   Filed 03/22/12   Page 9 of 21   Pageid#: 7115

participants in the enterprise).  Chang's actions were integral to the operation of the enterprise.  Without the manipulation of Lobo's accounting records, the issuing of false invoices, and the cutting of the kickback checks, the enterprise would have not been able to achieve its goal.  *Id.* at 979 ("[E]ven if [the defendants] may have been reluctant participants in a scheme devised by 'upper management,' they still knowingly implemented management's decisions, thereby enabling the enterprise to achieve its goals.").

The defendants argue that the fraud in which Chang, her husband, their companies were involved does not rise to the level of a RICO violation.  I note that I entered summary judgment against Chang's co-defendants on all claims, including RICO and RICO conspiracy.  The defendants' argument is essentially that the scheme which occurred here, the sale of finishing lines at inflated prices and the paying of kickbacks to those involved, did not involve a "pattern of racketeering activity" such that RICO is implicated.

A "pattern of racketeering activity" requires at least two acts of racketeering activity, one occurring after the effective date of the RICO statute and the last of which occurring within ten years after a prior act.  *See* 18 U.S.C.A. § 1961(5) (West 2000).  The "pattern" element of a RICO violation has two distinct, but often overlapping, parts.  First, the acts of racketeering activity and the predicate acts must

- 10 -

be related. The Supreme Court has defined the requirement of relatedness in this way, "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission . . . ." *Id.* at 240 (quotation marks and citation omitted). Second, the predicate acts must "amount to, or . . . otherwise constitute a threat of, *continuing*, racketeering activity." *Id.* (emphasis in original). The requirement of continuity does not limit RICO to conduct making up multiple schemes. Rather, continuity focuses on the temporal reach of the related conduct. As the Supreme Court explained, "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242.

The fraud engaged in by the defendants may have been a single overall scheme related to the sale of the machinery, but it was made up of multiple related predicate acts extending over a substantial period of time. The predicate acts included multiple acts not just of mail and wire fraud, but also included commercial bribery, and obstruction of justice. The acts were related in that they were all undertaken with the purpose of defrauding VFI. Finally, the acts occurred over a substantial period of time, namely from at least September 2005 through at least 2008, when, in the course of this litigation, the defendants refused to provide relevant documents and altered

- 11 -

data in the Platinum Program.  This is sufficient to show a pattern of racketeering activity under RICO.  *See Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1279 (7th Cir. 1989) (finding continuity where scheme involved many different types of predicate acts); *Morley v. Cohen,* 888 F.2d 1006, 1010-11 (4th Cir. 1989) (finding continuity shown in single scheme case where duration of activities was five years).

Finally, as to Chang's overall liability, I note that she invoked her Fifth Amendment privilege against self-incrimination at her second deposition.  As the finder of fact, I am permitted to draw an adverse inference from this invocation and I find that it provides additional evidence that she participated in an enterprise engaged in a pattern of racketeering activity and violated the federal RICO statute. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 183-84 (4th Cir. 2002).

Accordingly,  I find Chang liable under 18 U.S.C.A. § 1962 (c).  I also find her liable under 18 U.S.C.A. § 1962 (d) for conspiring to violate subsection (c).

The plaintiffs alleged multiple other counts against the defendants, namely common law conspiracy, statutory conspiracy under Va. Code Ann. §§ 18.2-499 and 500 (2009), conspiracy to commit fraud, conspiracy to commit conversion, conspiracy to breach a fiduciary duty, conspiracy to breach a contract, unjust enrichment,

conversion, fraud and money paid.[9]  At trial, the plaintiffs agreed that the claims of

conversion and conspiracy to commit conversion had not been proven and thus could

be dismissed.

The evidence submitted supports a finding of Chang's liability on all of the

remaining claims except for the claim of conspiracy to commit breach of fiduciary

duty.  This claim is based on the plaintiffs' allegation that Boyd, as manager of VFI,

owed a fiduciary duty to the company and its shareholders, including Nicewonder LP

I and Burke LP I and that the conspiracy between Boyd, Yuan, Chang and Lobo

Power Tools had as a goal, the breach of that fiduciary duty to VFI and its

shareholders.  While, as discussed, the evidence shows that Chang conspired with her

husband and Boyd to defraud VFI, there is no evidence of any contact between Chang

and Boyd and no evidence that Chang had any knowledge of, much less any

agreement to breach, Boyd's fiduciary duty to VFI.  *See Feddeman & Co., C.P.A.,*

*P.C., v. Langan Assocs., P.C.*, 530 S.E.2d 668, 674-75 (Va. 2000) (finding that where

---

[9]  The plaintiffs' claim for "money paid" seeks compensation for money paid by the
plaintiffs "under mistake" due to the actions of the defendants.  This is essentially a claim
for unjust enrichment.  *See Cent. Nat'l Bank of Richmond v. First & Merchs. Nat'l Bank of
Richmond*, 198 S.E. 883, 892 (Va. 1938) ("'The principle upon which a right of recovery is
based, in the case of money paid by mistake of fact, is well settled.  The right of recovery,
where it exists, is based upon the promise to return the money which the law implies . . .
whenever the circumstances are such that *ex aequo et bono* the money should be paid back
. . . .'" (quoting *Hibbs v. First Nat'l Bank of Alexandria, Va.*, 112 S.E. 669, 673 (Va. 1922)).

Case 1:08-cv-00014-JPJ-PMS  Document 358  Filed 03/22/12  Page 13 of 21  Pageid#: 7119

outside firm had specific knowledge of breach of fiduciary duties and assisted in the breach, the evidence supported a finding that outside firm conspired with employees to breach employees' fiduciary duties).

*Damages.*

Based on the evidence at trial, I find that the appropriate measure of damages to be the amount VFI paid for the two finishing lines ($1,485,443.57), less the cost of the finishing lines to Lobo Power Tools ($133,233.37 and $64,497.42), less Lobo Power Tools' average 24.4 per cent markup on its costs ($48,246.31), for a total of $1,239,466.47. Although at trial I indicated that I would not deduct the $52,000 offer for the machines that VFI received from a potential buyer (as testified to by Burke), I have decided that such a deduction is appropriate. Thus, the proper amount of damages, before trebling, is $1,187,466.47.[10]

Because I have determined that Chang, along with the other defendants, are liable for both RICO and Virginia statutory conspiracy violations, I now find that such damages should be trebled, thus amounting to $3,562,399.41.

The plaintiffs have also asked for punitive damages. The claim for punitive damages is not tied to any specific cause or causes of action. The plaintiffs are not

---

[10] Although there were various theories of recovery, the plaintiffs are only entitled to a unitary award of damages, as they agree.

- 14 -

entitled to punitive damages on their RICO claims.  *See In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 599 (E.D. Va. 2009) (it is "well-settled that the statutory civil remedy for RICO violations . . . is exclusive.").  Further, because the state law claims arise from the same set of facts and are based on essentially the same duties and injuries as the RICO claims, awarding punitive damages would be duplicative.  The state law claims are, effectively, subsumed by the RICO award.  *See Transition, Inc. v. Austin*, No. CIV. A. 301CV103, 2002 WL 1050240, at *2 (E.D. Va. Mar. 15, 2002) (finding that, for damages purposes, state law claims were effectively extinguished by a RICO recovery ).[11]

There remain certain outstanding issues related to damages.  First, plaintiffs in this action include VFI, the company which was victimized by the fraud in this case, and two of its owners/members, Nicewonder LP I and Burke LP I.[12]  Shareholders in a corporation, or members in a limited liability company, cannot maintain a direct action for injuries to the corporation.  Rather, such actions must be brought derivatively.  *See Simmons v. Miller*, 544 S.E.2d 666, 674 (Va. 2001); *see also Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845, 847-48 (Va. 2009).  There may be

---

[11]  Because of the award of triple damages, I will not award prejudgment interest.

[12]  The evidence shows that under VFI's Operating Agreement, any recovery made by VFI will go first to Nicewonder LP I and Burke LP I.

- 15 -

exceptions to this rule where the shareholder/member can show that it suffered injury independent and distinct from that suffered by the corporation. *See id.*, at 848 (noting, but not deciding whether to adopt, Delaware rule that a shareholder may maintain a direct action where injury is independent of any injury to the corporation and duty breached was owed directly to the shareholder); *see also Lyon v. Campbell*, No. 93-1570, 1994 WL 369453, at *3 n.2 (4th Cir. July 15, 1994) (unpublished) (noting, but not deciding, that a shareholder may maintain a direct action under RICO where injury sustained is separate and distinct from other shareholders).

The evidence does not support the conclusion that Nicewonder LP I and Burke LP I suffered separate and distinct injuries from those suffered by VFI. The defendants' fraudulent scheme and actions, including the fraudulent invoices and kickback payments, were directed at VFI. VFI suffered the injury of paying inflated prices to the defendants for the finishing line equipment. The injuries claimed by Nicewonder LP I and Burke LP I are grounded only in their investment of funds in VFI, investments which were not made based on the fraud perpetrated by the present defendants. Thus, Nicewonder LP I and Burke LP I did not suffer any injuries separate and distinct from that of VFI and, under the law, cannot recover damages in this action.

- 16 -

The plaintiffs argue that they can recover directly from the defendants on the conspiracy to breach fiduciary duty claim. They argue that the evidence shows that the defendants conspired with Boyd specifically to breach Boyd's fiduciary duty which he owed as manager of VFI. As I have noted, the general rule is that members of a limited liability company "cannot bring individual, direct suits against officers or directors for breach of fiduciary duty, but instead [members] must seek their remedy derivatively on behalf of the corporation." *Remora*, 673 S.E.2d at 848 (citing *Simmons*, 544 S.E.2d at 675)). The plaintiffs argue that their claim of fiduciary duty is an exception to this general rule because VFI's Operating Agreement establishes that Boyd, as the manager of VFI, owed a fiduciary duty both to VFI and to its members. The Operating Agreement states:

> The Manager shall be under a fiduciary duty to conduct the affairs of the Company in the best interests of the company and of the Members, including the safekeeping and use of all of the Property and the use thereof for the exclusive benefit of the Company.

(Pls.' Ex. 38.) In *Remora*, the Virginia Supreme Court recognized that limited liability companies and their members are free to vary commercial rules, such as the limitation on direct actions by members, if they agree to do so. 673 S.E.2d at 848. Thus, where an operating agreement specifically states that a manager owes a

- 17 -

fiduciary duty to the members of the limited liability company, such members can maintain a direct action for breach of that fiduciary duty.

Even if Boyd did owe a fiduciary duty directly to the members such that they could recover directly on his breach, the instant action is not against Boyd. The plaintiffs' assert that the conspiracy alleged in this case specifically contemplated breach of Boyd's fiduciary duty to Nicewonder LP I and Boyd LP I. However, the evidence simply does not support this claim. The conspiracy here was to defraud VFI. To that end, the defendants submitted false invoices to VFI and paid kickbacks to Boyd and his associates. There is simply no evidence that this conspiracy reached beyond VFI to its members or that injuring those members was a goal of the conspiracy. This is true even if, as the plaintiffs argue, Yuan was aware that Boyd was not the only member of VFI. The evidence does not show that Yuan knew and agreed to Boyd's breach of his fiduciary duty to the other members. Nicewonder LP I and Burke LP I cannot recover on this ground.[13]

*Attorney's Fees.*

The plaintiffs' have moved for attorney's fees and submitted extensive time sheets reflecting work done in this case. The total amount of attorney's fees claimed

---

[13] The conclusion that Nicewonder LP I and Burke LP I cannot recover directly from the defendants makes no practical difference. As noted above, they will recover first from any damages awarded to VFI.

- 18 -

is $712,773.81.  Both RICO and the Virginia conspiracy statute provide that an injured party may recover a reasonable attorneys' fee.  18 U.S.C.A. § 1964(c);  Va. Code Ann. § 18.2-500.

"The starting point for establishing the proper amount of [a fee] award is [the so-called lodestar product,] the number of hours reasonably expended, multiplied by a reasonable hourly rate."  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  Other considerations, such as those identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), may require that the award is adjusted from the lodestar figure.[14]  The hourly rate charged by counsel for the plaintiffs is reasonable.  However, the overall fee is not justified by the case itself.

The fraud perpetrated by the defendants in this case was relatively straightforward.  There were no significant novel or complex legal issues.  The facts, once uncovered, were clear.  I acknowledge that discovery in this case was difficult and made more so by the obstruction of the defendants.  I also acknowledge that the

---

[14] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19; *Rum Creek*, 31 F.3d at 175.

- 19 -

plaintiffs were successful in the prosecution of the case, although I note that defendants did not present any evidence on their behalf. However, the requested attorney's fees must be reasonable in light of the case as a whole. I will apply a reduction of 50 percent to the plaintiffs' request.

### D. Conclusions of Law.

1.      This court has subject matter jurisdiction.

2.      Defendant Esther Pei Fang Chang is liable for Counts One through Five and Eight through Twelve of the Third Amended Complaint.

3.      By agreement, Counts Six and Ten are dismissed.

4.      The defendants are jointly and severally liable to VFI for damages in the amount of $3,562,399.41.

5.      The defendants are not liable for punitive damages.

6.      Plaintiffs Nicewonder LP I and Burke LP I did not suffer any injuries separate and distinct from those suffered by VFI and cannot recover damages.

7.      The defendants are jointly and severally liable for attorneys' fees to VFI in the amount of $356,386.91.

II

For the foregoing reasons, final judgment will be entered awarding plaintiff Reconstituted VFI Associates, LLC, damages against all of the defendants, jointly and severally, in the amount of $3,562,399.41, together with attorneys' fees in the amount of $356,386.91.

DATED: March 22, 2012

/s/ JAMES P. JONES
United States District Judge